## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRETT RODRIGUEZ,<br>**Plaintiff** | : | No. 3:20cv258 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **CARBON COUNTY; JOSEPH HAGER;**<br>**KIRK F. SCHWARTZ; AGENT**<br>**BODDEN; JIM THORPE BOROUGH;**<br>**and MATTHEW SCHWARTZ,**<br>**Defendants** | :<br>:<br>:<br>:<br>: | |

## MEMORANDUM

Before the court are two motions for summary judgment, one filed by

Defendants Carbon County and Joseph Hager (collectively "County

Defendants"), and one filed by Defendants Kirk F. Schwartz, Crystal Adames,

Jim Thorpe Borough, and Matthew Schwarz (collectively "Commonwealth

Defendants") in this civil rights action filed pursuant to 42 U.S.C. § 1983 ("Section

1983").[1]  Having been extensively briefed, these motions are ripe for disposition.

---

[1] Defendant "Agent Bodden" has been identified in this litigation as Crystal Adames, a narcotics agent with the Pennsylvania Office of the Attorney General, Bureau of Narcotics Investigation ("OAG BNI").  When referring to this defendant, the parties have used "Adames" and "Bodden" interchangeably.  The court will refer to this defendant as "Agent Adames."

Additionally, two defendants in this action have similar last names.  Although the spelling differs in the caption, the court will use the correct spelling of Defendant Matthew Schwarz's last name to avoid confusion with Defendant Kirk F. Schwartz.  Defendant Kirk F. Schwartz is also an OAG BNI narcotics agent and will thus be referred to as "Agent Schwartz" in this memorandum.  Defendant Matthew Schwarz will be referred to as "Officer Schwarz" based on his position with the Jim Thorpe Borough police department at the time of his interaction with the plaintiff.

**Background**

This matter stems from law enforcement activity at a home in Summit Hill, Carbon County, Pennsylvania on February 13, 2018.  On that date, Plaintiff Brett Rodriguez resided at the home with several other individuals. (Doc. 81, Cnty. Defs. Statement of Facts, ¶¶ 2–3).[2]

Eight (8) members of law enforcement were involved in the operation:

- Defendant Hager, as the Chief Deputy of the Carbon County Sheriff's Office, accompanied by sheriff's deputies Kristy Cummins, Mitchell Kramer, and Allen Strohl, (Doc. 94-9, Cnty. Defs. Ans. to Pl. Interrogs. at 2);

- Defendants Agent Schwartz and Agent Adames, the state narcotics agents from OAG BNI, (Doc. 94-4, Pl. Ex. D, K. Schwartz Dep. 11:22-12:3, 33:7-24);

- Defendant Officer Schwarz, who participated as part of the multi-agency Carbon County Drug Task Force Program, (Doc. 94-3, Pl. Ex. C, M. Schwarz Dep. 16:6-13, 20:16-23); and

- Chief Joseph Fittos of the Borough of Summit Hill Police Department, (Doc. 94-6, Pl. Ex. F, J. Fittos Dep. 11:24–13:1).

---

[2] When possible, the court references the defendants' statements of facts ("SOF"), (see Doc. 81, Cnty. Defs. SOF; Doc. 89, Commw. Defs. SOF), for facts that are not disputed in the plaintiff's counterstatements, (see Docs. 94, 100).  Otherwise, this memorandum cites to portions of the summary judgment record supplied by the parties.  All facts from the record are construed in a light most favorable to plaintiff as the nonmoving party. See Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 187 (3d Cir. 2015)(citation omitted).

Of the above law enforcement personnel, the actions of Defendants Hager, Agent Schwartz, Agent Adames, and Officer Schwarz are at issue for the purposes of the pending motions for summary judgment.[3]

### 1. Bench Warrants for Residents, Ostensible Prior Drug Activity, and a Suspected Meth Lab

According to Defendant Hager, Carbon County's chief deputy sheriff, he sought to serve a bench warrant upon James Fredericks at the residence in Summit Hill. (Doc. 94-1, Pl. Ex. A., J. Hager Dep., 23:10-13). The sheriff's office also sought to arrest another reputed occupant, Chad Himelberger, based on a transferred warrant from Berks County. (Id., 23:10-13, 44:10-24). Per Defendant Hager, a Berks County sheriff's deputy relayed information about Himelberger's previous flight from authorities along with suspicions that there could be a meth lab at the residence in Summit Hill. (Id., 23:18–24:10, 34:10-22).

The court, for simplicity, has referred to the sheriff's deputies, state narcotics agents, and a borough police officer using the broader term "law enforcement." Under Pennsylvania law, however, this may be somewhat of a misnomer as to Defendant Hager and the Carbon County sheriff's deputies. See Commmonwealth v. Marconi, 64 A.3d 1036, 1037 (Pa. 2013). Important to the

---

[3] Chief Fittos and the Borough of Summit Hill were previously dismissed from this action. (Doc. 109). Thus, the court will only refer to Chief Fittos's testimony where it fits into the present issues.

background of this case, "absent specific statutory authorization, sheriffs lack authority to conduct independent investigations under the [Pennsylvania] Controlled Substances Act, including the seeking of search warrants where no breach of the peace or felony has occurred in their presence." Commonwealth v. Dobbins, 934 A.2d 1170, 1181 (Pa. 2007); see also Marconi, 64 A.3d at 1043–44 (Pa. 2013)(reiterating that sheriffs and their deputies "are not police officers" and are not "invested with general police powers beyond the authority to arrest for in-presence breaches of the peace and felonies[] in the absence of express legislative designation.").

Based on suspected drug activity, Defendant Hager contacted Agent Schwartz, a state narcotics agent with OAG BNI and the administrator of the Carbon County Drug Task Force. (Doc. 94-1, Pl. Ex. A., J. Hager Dep., 26:19–28:1; Doc. 94-4, Pl. Ex. D., K. Schwartz Dep., 11:12–12:7). Hager asked Agent Schwartz and other Drug Task Force officers to accompany the Carbon County Sheriff's Department in their attempt to execute the warrants. (Doc. 94-4, Pl. Ex. D., Dep. K. Schwartz Dep., 25:15–26:6). Agent Schwartz agreed and brought Agent Adames and Officer Schwarz into the mission. (Id., 27:23–28:11, 32:2-7, 33:10–34:11). Hager also called Chief Fittos from the Summit Hill Police Department to advise him of the activities within his jurisdiction. (Doc. 94-1, Pl. Ex. A., J. Hager Dep., 32:7-16).

4

At his deposition, Defednant Hager agreed that the operation had two purposes: 1) the Carbon County Sheriff's Department sought to execute the warrants regarding Fredericks and Himelberger; and 2) the Drug Task Force agents and officers "wanted to get in there to…confirm whether or not there was drug activity or meth lab activity in the house[.]" (Id., 28:15–29:8).

Hager also testified that he had not previously asked for the assistance of the Carbon County Drug Task Force in serving bench warrants.  (Id. 13:4-7). Similarly, Agent Schwartz testified that the operation was "unique." (Doc. 94-4, Pl. Ex. D., K. Schwartz Dep., 16:23–18:14).

According to several defendants, they had some prior working knowledge about the residence.  At a suppression hearing in the plaintiff's criminal matter related to this incident, Agent Schwartz testified that he had spoken with Hager about the residence and that his office "had numerous complaints about drug activity at that location." (Doc. 94-2, Pl. Ex. B., Suppression Hearing Trans. ("H.T.") 05/14/2019, 21:11-16).  Officer Schwarz from the Drug Task Force testified in his deposition that he was familiar with a different resident, Paul Zuzo. (Doc. 94-3, Pl. Ex. C, M. Schwarz Dep., 21:4–22:13).  Per his testimony, Officer Schwarz previously arrested Zuzo for driving under the influence after an incident where Zuzo fled from police on a motorcycle and Officer Schwarz then pursued Zuzo on foot through a wooded area. (Id., 23:8–26:5).  According to Officer

Schwarz, Zuzo was "a biker dude[,]" "known to be difficult[,]" and "known to be involved in...drug activity." (Id., 21:4–22:13, 34:25–36:15).  Officer Schwarz also testified that he told other law enforcement in preparation for the operation that, if they encountered Zuzo and "he doesn't comply, just get a little bit louder with him and give him a direct order and...he'll calm down." (Id., 35:23–36:15).

### 2. Law Enforcement Enter the Residence

After a briefing at the Carbon County Courthouse, law enforcement officers proceeded to the Summit Hill property in five separate vehicles. (Doc. 94-1, Pl. Ex. A., J. Hager Dep. 37:14–38:20).  Hager went to the front door with another sheriff's deputy, Kristy Cummins, while other law enforcement personnel secured the perimeter of the house. (Doc. 81, Cnty. Defs. SOF ¶ 11).  Hager knocked on the door for several minutes. (Id. ¶ 12).

Eventually, a subject of one of the warrants, James Fredericks, opened the door to the split-level residence. (Id. ¶¶ 12–13).  According to Chief Deputy Hager's testimony, he placed Fredericks under arrest and followed him into the home after Fredericks requested an opportunity to put on his shoes. (Doc. 94-1, Pl. Ex. A., J. Hager Dep. 21:2-9).  Once inside the home, Chief Deputy Hager asked Fredericks if he knew Chad Himelberger, the other individual subject to a warrant. (Id., 21:10-19).  According to Hager's testimony, Fredericks stated that

6

he did not know Himelberger.  (Id.)  Fredericks also relayed to Hager that there

were also other people in the house that he did not know. (Id.)  Hager testified:

> I said, Well, would you mind if we looked around? And he
> said, Sure. Go ahead. Then he proceeded downstairs to
> get his shoes with Deputy Cummins and I.  And the other
> agents came in behind me.

(Id. 21:15-19; see also Doc. 94-2, Pl. Ex. B, H.T., 05/14/2019, 18:6–19:25
(questioning by the court)).

Rodriguez, the plaintiff, disputes whether Fredericks provided legally

sufficient consent to search the premises.  In Rodriguez's criminal case,

Fredericks testified that he did not have a conversation with Hager about other

officers looking around the home.  (Id. 49:10-17).

Other members of law enforcement entered the residence after Defendant

Hager interacted with Fredericks.  Authorities, however, did not locate Chad

Himelberger. (Id. 8:1-9).  They did not confront Paul Zuzo. (Doc. 94-3, Pl. Ex. C,

M. Schwarz Dep., 40:21–41:6).  They did not discover a clandestine meth lab or

any crystal methamphetamine. (See Doc. 94-4, Pl. Ex. D., K. Schwartz Dep.,

38:9-22, 119:21–121:4).

Instead, Agent Schwartz and Agent Adames encountered Plaintiff Brett

Rodriguez emerging from a room in an upstairs hallway.  From there, the facts

diverge based on the differing accounts from the plaintiff and the law

enforcement defendants.

7

### 3. Rodriguez's Testimony

According to the plaintiff, he moved into the residence nine days earlier after his release from prison. (Doc. 94-7, Pl. Ex. G, Pl. Dep. 6:14-15, 11:11-13). Rodriguez testified that he knew Fredericks and that both were living at the residence with the permission of the plaintiff's grandfather. (Id., 5:17–6:15, 7:19–10:5). Rodriguez indicated that he tried to avoid the other occupants. (Id. 10:6-11, 12:2-24, 15:2-24). In his criminal trial, Rodriguez explained that there were unspecified issues in the home before he moved in. (Doc. 94-8, Trial Trans. 09/09/2021, ECF p. 4, 10:10-14).

Rodriguez testified that he was using a second-floor bathroom when he heard knocking on the door. (Doc. 94-7, Pl. Ex. G, Pl. Dep. 16:4-19). According to the plaintiff, he walked out and encountered a woman in a grey sweatshirt holding a pistol. (Id. 16:20-22). Rodriguez also observed a man with a "long ZZ Top-like beard." (Id. 17:13-21). Rodriguez thought the woman was "a biker" and that he was being robbed. (Id. 16:23–17:5). Rodriguez testified that he told these individuals to "[g]et the fuck out of [his] house." (Id. 17:24–18:16). Per Rodriguez, he subsequently observed an officer in uniform and realized that "the biker" and "the beard" were the police. (See id. 17:16–18:16).

According to Rodriguez, he then put his hands up and moved against the wall. (Id.) As the narcotics agents placed Rodriguez in handcuffs, he turned and

asked why he was being placed under arrest, using an expletive. (Id.) Officer

Schwarz then delivered a "sucker punch." (Id.) According to Rodriguez, he lost

consciousness and fell to the ground. (Id., 17:16–18:23, 20:8-23). Rodriguez

then recalled "being straddled and punched repetitively in [the] face and the side

of [the] head and being choked[]" by Officer Schwarz. (Id., 20:24–21:11).

Rodriguez estimates that Officer Schwarz punched him in the face between

thirteen (13) and sixteen (16) times. (Id., 22:22–23:1).

### 4. **Agent Schwartz and Agent Adames's Testimony**

From the side of law enforcement, Agent Schwartz and Agent Adames

testified that they entered the residence from the outside perimeter several

minutes after sheriff's deputies went into the house. (Doc. 94-4, Pl. Ex. D., K.

Schwartz Dep., 60:10–64:22, 67:23-25). Agent Schwartz testified that he

entered the home through the open front door to speak with a sheriff's deputy,

presumably Kristy Cummins. (Id., 67:18-22, 68:19:23). Per Agent Schwartz, he

asked Cummins if the other sheriff's deputies located the wanted subjects. (Id.,

68:24–69:9). Upon hearing people on the second floor of the split-level,

Schwartz also asked if the other deputies were up there and questioned whether

individuals on the second floor were secured. (Id., 68:24–69:9). Cummins

answered that she did not know to each of Agent Schwartz's questions, per his

testimony. (Id.)

9

Agent Schwartz and Agent Adames then went upstairs. As Agent Schwartz testified, the agents did so to determine whether sheriff's deputies needed assistance and to otherwise secure the home. (Id., 73:24–74:6, 80:14–81:1, 81:24–82:19). Per Agent Schwartz, as he proceeded down the second-floor hallway, Rodriguez emerged from a room holding an object (later determined to be an iPad), and an altercation ensued. (Id., 82:11:19, 83:9–20).

Agent Adames testified that she immediately said, "let me see your hands," because she did not know what the object was. (Doc. 94-5, Pl. Ex. E, C. Adames Dep., 42:22–43:6). According to Agent Schwartz, Rodriguez hurled profanities, and told the narcotics agents to get out of his house. (Doc. 94-4, Pl. Ex. D., K. Schwartz Dep., 93:3-9). Per Agent Schwartz, Rodriguez "wasn't interested in dialogue[,]" and postured his body as if a physical confrontation was about to occur. (Id., 88:12–89:12). According to Agent Schwartz, Rodriguez momentarily complied with a directive about being placed in handcuffs. (Id., 91:5-8, 92:19–93:2, 93:10-22). Per Agent Schwartz, Rodriguez then "kind of exploded" once the left handcuff was on. (Id. 93:23–95:24). Agent Schwartz testified that Rodriguez swung his left elbow, striking the narcotics agent in his left shoulder. (Id.)

With Rodriguez facing the wall, Agent Adames tried to get control of Rodriguez's right hand, per her testimony. (Doc. 94-5, Pl. Ex. E, C. Adames

10

Dep., 48:9-19, 52:24–53:20).  Agent Schwartz continued to hold Rodriguez's left wrist. (Id., 55:4-8).  As Agent Schwartz and Agent Adames tried to place Rodriguez in both handcuffs, Officer Schwarz came up the steps. (Id., 49:9-19).  According to Agent Adames, Officer Schwarz grabbed Rodriguez and caused everyone involved to fall to the floor. (Id., 52:8-15, 55:18-23).

Agent Adames then left the fray to secure the rest of the second-floor hallway, encountering two other individuals in a nearby bedroom. (Id., 56:2-19).  Agent Adames testified that she focused on those individuals and only heard the ensuing struggle. (Id., 58:8-19).

Agent Schwartz testified:

> And from there, it was just – I was kind of holding onto the handcuffs, and we were trying to get Rodriguez into custody. And it just -- it kind of -- it kind of went back and forth in that hallway. We were rolling around in the hallway, like up the hallway, down the hallway. He was on -- at the bottom. He was on his back. I was on my back. I was on top. Schwarz was on his back. Schwarz was on top. It was just -- it was kind of just -- it was really, truly just a fight at that point.

(Doc. 94-4, Pl. Ex. D., K. Schwartz Dep., 99:9-19).

Agent Schwartz estimated that the struggle lasted for approximately one to two minutes. (Id., 100:7-14).  According to Agent Schwartz, Rodriguez was swinging his hands and feet in resistance. (Id., 102:10-20).

In his deposition in this case, Agent Schwartz testified:

11

> Q. Did you actually see Officer Schwarz hitting Mr. Rodriguez?
>
> A. There was fists flying in every direction, his and Rodriguez's -- fists, elbows, feet, knees. Like, I couldn't tell you what I saw, as far as what punches landed from who. *[sic]*

(Id. 101:7-12).

On the other hand, Agent Schwartz testified in Rodriguez's criminal case that Officer Schwarz used open-hand strikes to get Rodriguez to comply with their commands. (Doc. 94-2, Pl. Ex. B., H.T. 05/14/2019, 24:20–25:2).

### 5. Officer Schwarz's Testimony

As for Officer Schwarz, he testified that he could hear screaming coming from inside the residence. (Doc. 94-3, Pl. Ex. C., M. Schwarz Dep., 70:14–71:15). He entered the home, heard Rodriguez yelling, and observed Agent Schwartz attempting to place the plaintiff into handcuffs. (Id.) Per Officer Schwarz, he came up from behind the parties and used a take-down move, which brought everyone to the floor. (Id., 74:15–75:3, 99:16–104:4). Officer Schwarz testified that he then used three (3) to five (5) closed-fist strikes to Rodriguez's forehead before the plaintiff could be handcuffed. (Id. 110:7-18).

Authorities then walked the plaintiff to the first floor living room and placed him in a position facing the wall. (Id. 113:5–114:9). The parties dispute whether Rodriguez then slammed his own head and face against that wall. The parties

12

also dispute whether Rodriguez slammed his own head and face against the interior of a police vehicle while in custody.

### 6. The Aftermath

Chief Fittos later transported Rodriguez to the Summit Hill Police Department headquarters for processing and the filing of criminal charges. (Doc. 81, Cnty. Defs. SOF ¶ 35). Authorities charged Rodriguez with the following crimes in the Carbon County Court of Common Pleas: two counts of aggravated assault in violation of 18 PA. CONS. STAT. § 2702(a)(3); and two counts of simple assault in violation of 18 PA. CONS. STAT. § 2701(a)(1). (Id. ¶ 36).

Through his criminal defense counsel, Rodriguez filed a motion to suppress in state court. (Id. ¶ 37). After a hearing, Common Pleas Judge Joseph J. Matika denied the suppression motion. Per the state trial court's memorandum, the Commonwealth demonstrated both that "no 'search' occurred upon entry of the premises and that consent existed for a warrantless search[.]" (Doc. 81-1, Cnty. Defs. Ex. A, Memo. Op. & Order 12/30/2019, ECF p. 44). Moreover, the state court determined that James Fredericks, the subject of one of the bench warrants, provided law enforcement with implicit permission to enter the premises to execute his arrest. (Id., ECF p. 47). Per the trial court's opinion, Fredericks expanded his initial consent to enter the premises to include conducting a premises-wide search for the other subject of a warrant, Chad

13

Himelberger. (Id., ECF p. 48).  Despite this adverse ruling, however, a jury acquitted Rodriguez of all charges on September 9, 2021. (Doc. 94-8, Pl. Ex. H. Trial Trans. 204:10–205:7).  Rodriguez did not appeal the ruling.  In opposing summary judgment, he emphasizes that he could not appeal and thus the circumstances prevented review of Judge Matika's decision.

Based on the above, Rodriguez maintains several causes of action against the defendants in the amended complaint.  In his first claim for relief, Rodriguez asserts claims against all defendants under Section 1983 for the following deprivations of his Fourth and Fourteenth Amendment rights: 1) the right to be free from the state's unreasonable use of force; 2) the right to not be subjected to unreasonable searches or seizures, 3) the right to not be subjected to malicious prosecution; and 4) the right to not be deprived life, liberty, or property without due process of law. (Doc. 29, Am. Compl. ¶ 37).  Rodriguez's amended complaint also contends that all law enforcement personnel on scene failed to intervene in the use of unreasonable force. (Id. ¶ 29).  Furthermore, Rodriguez's first cause of action asserts municipal liability claims against Defendants Carbon County and Jim Thorpe Borough.

In his second claim for relief, plaintiff raises the following causes of action against Defendants Hager, Agent Schwartz, Agent Adames, and Officer Schwarz

under Pennsylvania law:  1) assault and battery; 2) false arrest; 3) malicious

prosecution; 4) false imprisonment; and 5) willful misconduct.  (Id. ¶ 55).

At the close of discovery, the County Defendants (Hager and Carbon

County) moved for summary judgment on all claims asserted against them.

(Doc. 80).  The Commonwealth Defendants (Agent Schwartz, Agent Adames,

Officer Schwarz, and Jim Thorpe Borough) followed suit with a motion for partial

summary judgment.[4] (Doc. 88).  Having been fully briefed and argued, both

motions for summary judgment are ripe for disposition.

## Jurisdiction

Because this case proceeds pursuant to Section 1983, the court has

jurisdiction under 28 U.S.C. § 1331. ("The district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of

the United States.").  The court has supplemental jurisdiction over plaintiff's state-

law claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the

district courts have original jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within

---

[4] Initially, it appeared as if the Commonwealth Defendants were not seeking summary
judgment on some of the Section 1983 and state law claims asserted against Officer Schwarz.
(Doc. 90, Commw. Defs. Br. in Supp. at 12-15).  Their reply brief muddies the waters by
invoking qualified immunity on behalf of this defendant.  (See Doc. 104 at 5-10).

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

The defendants have filed motions for summary judgment.  Granting summary judgment is proper " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " See Knabe v. Boury Corp., 114 F.3d 407, 410 n. 4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)).  "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir.1990).  The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248.  A fact is material when it might affect the outcome of the suit

under the governing law. Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Analysis**

1. **Determining Plaintiff's Claims, Construing the Parties' Arguments, and Resolving Uncontested Matters**

In conjunction with the defendants' two motions for summary judgment, there are several preliminary matters to resolve.  First, the Commonwealth Defendants initially pursued their motion for summary judgment as if Rodriguez did not assert Section 1983 claims against Agent Schwartz, Agent Adames, and Officer Schwarz.  (See Doc. 90. Commw. Defs. Br. in Supp. at 3, 8 (arguing that Rodriguez's first claim for relief for federal civil rights violations only names Defendant Jim Thorpe Borough)).  Rodriguez filed a brief in opposition indicating that the Commonwealth Defendants were incorrect in their reading of the amended complaint. (Doc. 101 at 4, n. 1.).  This prompted extensive argument in

the Commonwealth Defendants' reply brief regarding the form of Rodriguez's pleading and disputes over which claims applied to which defendants. (Doc. 104 at 1-4).  Subsequently, the court permitted sur-reply briefing for Rodriguez to address this and other issues, including a belated assertion of qualified immunity by the Commonwealth Defendants. (Doc. 110).

As noted above, Rodriguez asserts several Section 1983 causes of action in his amended complaint.  In addition, Rodriguez advances state law claims against Defendants Hager, Agent Schwartz, Agent Adames, and Officer Schwarz for: 1) assault and battery; 2) false arrest; 3) false imprisonment; and 4) malicious prosecution.

Regarding his Section 1983 claims, Rodriguez's amended complaint clearly references all defendants' collective conduct in causing the deprivation of his constitutional rights. (Doc. 29, Am. Compl. ¶¶ 7-8, 11, 17, 21, 24-29, 32, 33, 37). Reading the amended complaint as a whole, the court thus construes plaintiff's allegations to assert Section 1983 claims for: 1) unreasonable search; 2) excessive force; 4) failure to intervene in the use of excessive force; 4) false arrest; and 5) malicious prosecution against Defendants Hager, Agent Schwartz, Agent Adames, and Officer Schwarz.  The County Defendants, who filed their motion for summary judgment first, appear to have construed the amended complaint in the same manner.  Otherwise, those defendants would not have

raised qualified immunity on behalf of Defendant Hager in their initial brief. In light of the above, the amended complaint provides sufficient notice to the Commonwealth Defendants regarding Rodriguez's Section 1983 claims against Agent Schwartz, Agent Adames, and Officer Schwarz.

For his part, Rodriguez has narrowed his claims through his opposition papers. First, Rodriguez concedes that his Fourteenth Amendment substantive due process claims should be dismissed because his federal constitutional claims are covered by the Fourth Amendment. (Doc. 101, Pl. Br. in Opp. to Commw. Defs. MSJ, p. 7). The court will thus dismiss Rodriguez's Fourteenth Amendment claims as to all defendants without additional discussion. Second, in response to the Commonwealth Defendants' motion, Rodriguez agrees that summary judgment should be granted on all claims against Defendant Jim Thorpe Borough. (Doc. 101, Pl. Br. in Opp., p. 7). Summary judgment will thus be granted in favor of Jim Thorpe Borough and that municipality will be dismissed from this action. Consequently, the only municipal liability claim asserted by the plaintiff remains pending against Carbon County and will be discussed in Section 5 below.

Next, Rodriguez failed to argue against the entry of summary judgment on his malicious prosecution claims as to certain defendants. For example, the Commonwealth Defendants contend that summary judgment is warranted on the

19

malicious prosecution claims as asserted against Agent Schwartz, Agent Adames, and Officer Schwarz. (Doc. 90, Commw. Defs. Br. in Supp at 9-10). Rodriguez opposes with arguments only relative to Officer Schwarz's conduct. (Doc. 101, Pl. Br. in Opp. at 7-10). Similarly, the County Defendants argue that plaintiff's malicious prosecution claim against Defendant Hager fails. (Doc. 82, Cnty. Defs. Br. in Supp. at 10-11). Rodriguez appears to agree that these claims should be dismissed because he did not respond to this argument in his opposition brief. (See Doc. 95). Thus, summary judgment will be granted in favor of Defendants Hager, Agent Schwartz, and Agent Adames on Rodriguez's malicious prosecution claims without additional discussion. Only Rodriguez's malicious prosecution claim against Officer Schwarz remains pending for consideration in Section 3c below.

The court thus turns to the remaining matters. Both the County Defendants and Commonwealth Defendants contend that the court does not have jurisdiction over Rodriguez's Section 1983 claims related to the entry into the plaintiff's home pursuant to the Rooker-Feldman doctrine. After oral argument, these arguments have been rehashed by the defendants with some reference to the principles of preclusion law. Defendants Hager, Agent Schwartz, Agent Adames, and Officer Schwarz also seek summary judgment on the plaintiff's illegal entry claims based upon the principles of qualified immunity. As for the federal and state claims

related to Rodriguez's detention, arrest, and prosecution, Defendants Hager, Agent Schwartz, Agent Adames, and Officer Schwarz also attack these claims in different manners relative to their overall roles in the incident.

It is helpful to consider this a case in two parts, the first related to law enforcement's entry into the plaintiff's home and the second related to plaintiff's detention, arrest, and prosecution. For ease of disposition, the court will address the plaintiff's illegal entry and illegal search claims first, since the arguments challenging such claims are more overarching and less nuanced as to the individual law enforcement defendants.

### 2. Plaintiff's Claims Related to Entry into the Residence

Each defendant asserts that the illegal entry and illegal search portion of this action runs afoul of the <u>Rooker–Feldman</u> doctrine.[5] (Doc. 82 at 6-9). As discussed above, Rodriguez challenged the legality of law enforcement entry into the residence with a suppression motion in his criminal case. Per the defendants, the denial of Rodriguez's suppression motion in state court prevents the court, under <u>Rooker-Feldman</u> principles, from considering his similar illegal search claims in this civil action.

---

[5] Although named after two Supreme Court decisions, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923) and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983), this doctrine is derived from 28 U.S.C. § 1257, which vests the authority to review state court judgments solely with the United States Supreme Court. <u>Vuyanich v. Smithton Borough</u>, 5 F.4th 379, 384 (3d Cir. 2021)(citing <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280, 292 (2005)(quotation marks and brackets omitted)).

After careful consideration of the parties' arguments raised in two rounds of briefs, the defendants blend application of the <u>Rooker–Feldman</u> doctrine with the principles of claim and issue preclusion.[6] This situation is not uncommon. <u>See Lance v. Dennis</u>, 546 U.S. 459, 466 (2006)(*per curiam*)("The District Court erroneously conflated preclusion law with <u>Rooker–Feldman</u>."); <u>Arnold v. KJD Real Est., LLC</u>, 752 F.3d 700, 706 (7th Cir. 2014)("Courts often confuse <u>Rooker–Feldman</u> cases with cases involving ordinary claim or issue preclusion.").

Under the law, "[t]he <u>Rooker–Feldman</u> doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.' " <u>Lance</u>, 546 U.S. at 460 (2006)(quoting <u>Exxon Mobil Corp.</u>, 544 U.S. at 284 (2005)). Preclusion, on the other hand, does not implicate the court's jurisdiction. <u>See Exxon Mobil Corp.</u>, 544 U.S. at 293. ("In parallel litigation, a federal court may be bound to recognize the claim- and issue-preclusive effects of a state-court judgment, but federal jurisdiction over an action does not terminate automatically on the entry of judgment in the state court.").

---

[6] The term *res judicata* is regularly invoked to refer to the principles of claim preclusion, while the term collateral estoppel is customarily used to refer to principles of issue preclusion. <u>See E. Pilots Merger Comm. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)</u>, 279 F.3d 226, 232 (3d Cir. 2002).

Four conditions must be met for the <u>Rooker–Feldman</u> doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." <u>Great W. Mining & Min. Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 166 (3d Cir. 2010) (quoting <u>Exxon Mobil Corp.</u>, 544 U.S. at 284). When all four requirements are satisfied, a claim must be dismissed for lack of subject matter jurisdiction. <u>See</u> <u>Merritts v. Richards</u>, 62 F.4th 764, 774 (3d Cir. 2023)(citations omitted). But, overall, "<u>Rooker-Feldman</u> is a limited doctrine that must not be applied outside of a precise, narrow set of circumstances." <u>Vuyanich</u>, 5 F.4th at 390.

The court agrees with Rodriguez that the <u>Rooker-Feldman</u> doctrine does not apply to this civil action. Although: 1) Rodriguez lost the suppression motion as a criminal defendant in state court; 2) the state court judge decided the motion prior to this lawsuit; and 3) the plaintiff seeks review and rejection of the trial court's ruling, the second <u>Rooker-Feldman</u> requirement has not been met, that is, Rodriguez must be complaining of injuries caused by a state-court judgment. "[W]hen the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court[.]" <u>Great W. Mining & Min.</u>

<u>Co.</u>, 615 F.3d at 167.  Here, Rodriguez's constitutional injuries allegedly came from the conduct of the defendants, not the decision by the state trial court judge in ruling upon his suppression motion.  Based on that fact alone, <u>Rooker–Feldman</u> is inapplicable. <u>See id.</u> at 173.  Summary judgment on Rodriguez's illegal entry and illegal search claims will thus be denied based on the defendants' invocation of the <u>Rooker-Feldman</u> doctrine.

Nonetheless, since Rodriguez's state-court adjudication is complete, disposition of this portion of his Section 1983 case is governed by state preclusion law. <u>See</u> <u>Exxon Mobil Corp.</u>, 544 U.S. at 293.  Under the Full Faith and Credit Act, 28 U.S.C. § 1738, "federal courts give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." <u>Lance</u>, 546 U.S. at 466 (cleaned up). "Congress has directed federal courts to look principally to state law in deciding what effect to give state-court judgments." <u>Id.</u>

Following oral argument, the court directed the parties to file supplemental briefs regarding the issues of claim preclusion, issue preclusion, and/or exhaustion of state court remedies as they relate to determinations made by the Carbon County Court of Common Pleas in the plaintiff's criminal case. Following such briefing, summary judgment will be granted in favor of the

defendants on Rodriguez's Section 1983 claims related to law enforcement's entry into the residence based upon the principles of issue preclusion.

Under the law, defendants in a Section 1983 suit may assert issue preclusion where a plaintiff attempts to relitigate issues decided against them in state criminal proceedings. See Anela v. City of Wildwood, 790 F.2d 1063, 1068 (3d Cir. 1986)(citing Allen v. McCurry, 449 U.S. 90, 101 (1980)). "The federal court, in determining the collateral estoppel effect of a state court proceeding, should apply the law of the state where the criminal proceeding took place and also ascertain whether the party against whom the estoppel is asserted had a full and fair opportunity to litigate the issue decided in the state court." Id. (citing Bower v. O'Hara, 759 F.2d 1117, 1124 (3d Cir. 1985)).

Under Pennsylvania law, "[t]he phrase...'issue preclusion,' simply means that when an issue of law, evidentiary fact, or ultimate fact has been determined by a valid and final judgment, that issue cannot be litigated again between the same parties in any future lawsuit." Commonwealth v. Brockington-Winchester, 205 A.3d 1279, 1283 (Pa. Super. Ct. 2019); see also In re Coatesville Area Sch. Dist., 244 A.3d 373, 379 (Pa. 2021)(issue preclusion "bars re-litigation of an issue that was decided in a prior action, although it does not require that the claim as such be the same."). Issue preclusion "is based upon the policy that 'a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial

proceedings, on an issue identical in substance to the one he subsequently seeks to raise.' " McGill v. Southwark Realty Co., 828 A.2d 430, 434 (Pa. Commw. Ct. 2003)(quoting Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991)).

Issue preclusion applies if: 1) the issue is the same as in the prior litigation; 2) the prior action resulted in a final judgment on the merits; 3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior action; and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action. See In re Coatesville Area Sch. Dist, 244 A. 3d at 379. "In some renditions, courts add a fifth element, namely, that resolution of the issue in the prior proceeding was essential to the judgment." Id. (citing Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 50-51 (Pa. 2005)).

The summary judgment record demonstrates that: 1) the Fourth Amendment issues decided by Judge Matika in Rodriguez's state criminal court case are analogous to the illegal entry and illegal search claims raised by plaintiff in this Section 1983 action; 2) the criminal charges resulted in a final judgment by a jury; 3) Rodriguez is a party to both actions; and 4) Rodriguez had a full and fair opportunity to litigate his contentions at a suppression hearing where he was represented by counsel. On the fourth element, Rodriguez's criminal defense

counsel had an opportunity to cross-examine the Commonwealth's witnesses (Defendants Hager, Agent Schwartz, and Officer Schwarz) and call witnesses on Rodriguez's behalf (Fredericks). (Doc. 94-2, Pl. Ex. B, H.T. 05/14/2019). Ostensibly, Judge Matika found Defendant Hager's testimony to be more credible than that of Rodriguez's housemate, Fredericks.[7]  Issues of fact regarding

---

[7] In Section 1983 actions, "federal courts could step in where the state courts [are] unable or unwilling to protect federal rights." Allen, 449 U.S. at 101.  In opposing Commonwealth Defendants' motion for summary judgment, Rodriguez specifically argued that Judge Matika did not "consider, evaluate, or even acknowledge" Fredericks's suppression hearing testimony. (Doc. 101 at ECF p. 4).  Although it is not explicitly indicated, it appears that the state trial court simply rejected Fredericks's testimony. (See Doc. 81-1, Cnty. Defs. Ex. A, Memo. Op. & Order 12/30/2019, ECF p. 47-48).

Moreover, "[t]he Supreme Court has 'long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.' " United States v. Price, 558 F.3d 270, 277 (quoting Florida v. Jimeno, 500 U.S. 248, 250–51 (1991)).  A warrantless search is lawful when done pursuant to valid, voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).  "[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared," United States v. Matlock, 415 U.S. 164, 170 (1974).

"[V]oluntariness 'is a question of fact to be determined from the totality of all of the circumstances.' " United States v. Givan, 320 F.3d at 459 (quoting Schneckloth, 412 U.S. at 227).  Additionally, "a person may 'delimit as he chooses the scope of the search to which he consents.' " United States v. Williams, 898 F.3d 323, 329 (3d Cir. 2018)(quoting Jimeno, 500 U.S. at 252).  "[T]he standard for measuring the limitations placed on a consensual search "is that of objective reasonableness[,]'" and a determination of the legal bounds of a consensual search comes down to "'what…the typical reasonable person [would] have understood by the exchange between the officer and the suspect.' " Id. (quoting Jimeno, 500 U.S. at 251).

By the nature of its conclusions, the state trial court heard the witnesses, weighed credibility, and resolved disputed facts against Rodriguez on the issue of Fredericks's consent for law enforcement to look around the residence for Chad Himelberger.  It cannot be said that the Pennsylvania court was unable or unwilling to protect Rodriguez's federal rights.

Rodriguez's search-related Fourth Amendment claims were thus subjected to a full and fair adversarial contest.

Additionally, as for the fifth element of issue preclusion, that is, "resolution of the issue in the prior proceeding was essential to the judgment[,]" Rodriguez's defense counsel summarized the prior issue in state court: "Whether Deputy Hager and the other officers performed an unreasonable search under the Pennsylvania and Federal Constitution when they entered a home without a warrant or an exception to the warrant requirement." (Doc. 81-1, Cnty. Defs. Ex. A, Memo. Op. & Order 12/30/2019, ECF p. 38).  Judge Matika resolved that issue against Rodriguez.  After denial of Rodriguez's suppression motion, a Carbon County jury heard evidence related to law enforcement's entry into residence and their encounter with the plaintiff.[8] (Doc. 94-8, Pl. Ex. H Trial Tr. 09/09/2021, 128:9-140:17). Although a jury acquitted Rodriguez on charges of assaulting the officers, the resolution of his Fourth Amendment search issues by the court was essential to that judgment.  Otherwise, Rodriguez's criminal case would not have proceeded to trial.

All of the elements of issue preclusion are present in this case and Rodriguez's search-related Fourth Amendment claims are subject to summary judgment.  In the latest round of briefing, however, Rodriguez requests that the

---

[8] The parties did not include the full trial transcript with the summary judgment record.

28

court apply an equitable exception to the general rules of issue preclusion based upon Restatement (Second) of Judgments § 28(1).  (Doc. 119 at 5-6).

Specifically, that section provides:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> (1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action;

RESTATEMENT (SECOND) OF JUDGMENTS § 28 (1982).

The Supreme Court of Pennsylvania acknowledges that the Restatement (Second) of Judgments provides exceptions to the general rules of issue preclusion.  Clark v. Troutman, 502 A.2d 137, 139 (Pa. 1985)(applying RESTATEMENT (SECOND) OF JUDGMENTS § 28(2)).  Rodriguez's opposition brief, however, does not reference a case from Pennsylvania specifically adopting Section 28(1) of the Restatement (Second) of Judgments.  The court's research has uncovered none.

Rather, Rodriguez's argument relies upon footnoted dicta in a non-precedential decision from the Third Circuit Court of Appeals for the proposition that "[w]hen an acquittal prevents a criminal defendant from appealing a ruling, the ruling has no preclusive force." (Doc. 119 at 5-6)(citing Efunnuga v. Farley,

29

No. 23-2405, 2024 WL 3042381, at *4, n. 6 (3d Cir. June 18, 2024)). The court is not bound by that decision.[9]

Moreover, cases from the Third Circuit Court of Appeals applying Section 28(1) of the Restatement (Second) of Judgments are not factually on point. For example, in Edwards v. Boeing Vertol Co., 750 F.2d 13, 15 (3d Cir. 1984), employees of a corporation had filed a separate class action on behalf of all black employees, alleging a company-wide pattern or practice of race discrimination. Id. at 14. The district court dismissed the class action and ruled on the merits of non-named plaintiff's claims. Id. The Third Circuit affirmed but determined it could not address the merits of the individual claim raised by the non-named plaintiff. Id. (citing Dickerson v. United States Steel Corp., 582 F.2d 827 (3d Cir.1978)). The non-named plaintiff was unable to appeal the district court's determination that his individual claim lacked merit. In the subsequent

---

[9] In Efunnuga, the district court did not address the defendants' collateral estoppel arguments, which they raised in a motion for summary judgment in a case where the plaintiff challenged whether he provided officers with consent to search a basement. Efunnuga v. Farley, No. CV 18-924, 2023 WL 11820536, at *5 (E.D. Pa. July 13, 2023). Although it appeared to the district court that the plaintiff was seeking to relitigate a suppression claim, which the state court rejected in the plaintiff's criminal matter, the district court sidestepped issue preclusion and analyzed the legality of the search. Id. On appeal, the Third Circuit determined that the district court did not view the record, i.e., the totality of the circumstances, in the light most favorable to the plaintiff when evaluating the legality of the search. 2024 WL 3042381, at *4. In the footnote from Efunnuga referenced by plaintiff in this case, the Third Circuit instructed the district court not to revisit the defendants' collateral estoppel arguments on remand. Id. at *4, n. 6 (citing Bradley v. Reno, 749 F.3d 553, 558-59 (6th Cir. 2014); RESTATEMENT (SECOND) OF JUDGMENTS § 28 cmt. a (1982); Commonwealth v. Thevenin, 948 A.2d 859, 863 (Pa. Super. Ct. 2008)).

case, <u>Edwards</u>, the Third Circuit held that the plaintiff could not be collaterally estopped from litigating the merits of his employment discrimination claim if he was unable to appeal a previous determination. <u>Id.</u> at 15.

Additionally, in <u>Doe v. Hesketh</u>, 828 F.3d 159 (3d Cir. 2016), the Third Circuit determined that a victim of child pornographers could proceed with a suit for civil damages against those pornographers under Masha's Law although the victim had previously received criminal restitution.  Analyzing the elements of collateral estoppel, the appellate court determined that the plaintiff was not in privity with the government and did not have a full and fair opportunity to litigate the question of her damages. <u>Id.</u> at 171–73.  Additionally, the Third Circuit applied Restatement (Second) of Judgments § 28(1) because the civil plaintiff was unable to appeal the sentencing court's award of criminal restitution.  <u>Id.</u> at 174.

Thus, courts typically apply Restatement (Second) of Judgments § 28(1) "to the narrow set of judgments where a party has no right to appeal at any time because such appeals are wholly unavailable 'as a matter of law.' " <u>Greenleaf v. Garlock, Inc.</u>, 174 F.3d 352, 361, n. 6 (3d Cir. 1999).  In arguing for the exception to be applied here, Rodriguez contends that he could not appeal the adverse suppression ruling in state court because of his acquittal.  Under Pennsylvania law, "[t]he general rule in criminal cases is that a defendant may appeal only from

31

a final judgment of sentence, and an appeal from any prior order or judgment will be quashed." Commonwealth v. Ivy, 146 A.3d 241, 255 (Pa. Super. Ct. 2016). A criminal defendant, however, may petition for permission to appeal an interlocutory order. See 42 PA. CONS. STAT. § 702(b); PA. R. APP. P. 312, 1311. In theory, Rodriguez could have pursued this route.

From the court's research, Pennsylvania courts have not expressly forbidden criminal defendants from petitioning for permission to appeal adverse suppression rulings as a matter of law. See Commonwealth v. Rosario, 648 A.2d 1172, 1175 (Pa. 1994); see also id. at 630 (Montemuro, J., concurring op.)(sitting by designation and joined by three justices)(discussing the availability of interlocutory appeals by permission); Commonwealth v. Strong, 825 A.2d 658, 667–68 (2003); Thevenin, 948 A.2d at 863 ("Procedurally, an appeal by a defendant from an adverse suppression ruling is not heard until after sentencing. Thus, the issue is interlocutory. While it might be sensible to address all suppression issues at one time, this issue was not placed before the trial court and was not addressed in the trial court's Pa.R.A.P.1925(a) opinion. Further, the issue was not certified for interlocutory appellate review.").

The Superior Court of Pennsylvania has thus, on occasion, addressed the merits of criminal defendants' petitions for appeal by permission where those defendants received adverse rulings on their motions to suppress. See e.g.

Commonwealth v. Shepard, No. 238 MDA 2018, 2018 WL 3946394, at *1 & n .1 (Pa. Super. Ct. Aug. 17, 2018); Commonwealth v. Ranger, No. 618 WDA 2017, 2018 WL 3079702, at *1 & n. 1 (Pa. Super. Ct. June 22, 2018); Commonwealth v. Gibson, No. 1153 WDA 2017, 2018 WL 2016101, at *1 (Pa. Super. Ct. May 1, 2018); see also Commonwealth v. Dennis, No. 3286 EDA 2016, 2018 WL 1322174, at *2 (Pa. Super. Ct. Mar. 15, 2018)(quashing a defendant's appeal of a motion to suppress where the defendant did not appropriately seek certification of the order or file a petition for permission to appeal).

Rodriguez asks for an equitable exception to issue preclusion to be applied here. However, in the absence of applicable Pennsylvania precedent or clear guidance from the Third Circuit Court of Appeals in the Section 1983 context, the court will decline to do so. In this matter, Rodriguez enjoyed a full and fair opportunity to litigate the entry and search portions of his Section 1983 claims in his state criminal proceedings. The ruling denying his motion to suppress is final. Consequently, Rodriguez's contentions cannot be raised again here in this Section 1983 action. Summary judgment will thus be entered in favor of all defendants on all of Rodriguez's claims related to law enforcement's entry into his residence.

### 3. Plaintiff's Claims Related to His Arrest and Prosecution

In addition to claims related to entry into the home, Rodriguez asserts several claims related to his detention, arrest, and prosecution. Here, the court must again resolve contentions between the parties regarding the Rodriguez's claims and construe their summary judgment arguments broadly to address all of the claims raised in the plaintiff's amended complaint.

To clarify, the plaintiff's averments include specific references to a Section 1983 excessive force claim and a state law claim for assault and battery. (Doc. 29, Am. Compl. ¶¶ 26, 35(b), 37). In conjunction with those allegations, plaintiff also advances that "[a]t no point...did law enforcement personnel present in and about the residence... intervene to prevent or stop the assault and beating of Mr. Rodriguez." (Id. ¶ 27). Such allegations are sufficient to advance claims against the individual law enforcement defendants that they failed to intervene in the use of excessive force in violation of the Fourth Amendment.

Rodriguez's averments also include specific reference to Section 1983 and common law malicious prosecution claims. (Id. ¶¶ 29–33, 35(c), 37, 55). Those same averments can also be construed as a claim for false arrest in violation of Section 1983, particularly because Rodriguez also asserts state law claims for false arrest and false imprisonment. (Id. ¶ 55). Under the law, a claim for false arrest or false imprisonment covers the time from arrest until formal legal process

is initiated when a claim for malicious prosecution then accrues.  Wallace v. Kato, 549 U.S. 384, 387–92 (2007); see also Rivera-Guadalupe v. City of Harrisburg, 124 F.4th 295, 303 (3d Cir. 2024)(citations omitted)(discussing the differences in the substance and duration of false arrest and malicious prosecution claims). Where appropriate, the court will address Rodriguez's Section 1983 claims relative to his arrest and prosecution with their state law counterparts.

Those issues aside, Defendants Hager, Agent Schwartz, Agent Adames, and Officer Schwarz all seek summary judgment on the claims related to the plaintiff's detention, arrest, and prosecution in various manners and for specific reasons tailored to their involvement in the incident.  The court first addresses these claims as raised against Defendant Hager along with his arguments in support of summary judgment.

### a. Defendant Hager

Defendant Hager specifically moves for summary judgment on the excessive force claim. (Doc. 82, Cnty. Defs. Br. in Supp. at 10).  The court will also construe Defendant Hager's arguments to cover any Section 1983 claim for failure to intervene in the use of excessive force. (Id.)  Since Rodriguez's claims all arise from the same operative facts, the court also construes Defendant Hager's arguments to reach the plaintiff's state law claim for assault and battery as well.

The right to be free from the use of excessive force has been recognized under the Fourth Amendment.  Anglemeyer v. Ammons, 92 F.4th 184, 188 (3d Cir. 2024)(citations omitted).  "The question in excessive force cases is whether, under the totality of the circumstances, 'the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' "  Id. (quoting Graham v. Connor, 490 U.S. 386, 394 (1989).  Additionally, " 'a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force,' but only 'if there is a realistic and reasonable opportunity to intervene.' "  El v. City of Pittsburgh, 975 F.3d 327, 335 (3d Cir. 2020) (quoting Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002)(formatting modified).

As for the state law claim for assault and battery, an "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)(citing Cohen v. Lit Brothers, 70 A.2d 419, 421 (Pa. Super. Ct. 1950)).  "It is conceivable that a jury could find a police officer liable" for assault and battery "under circumstances which demonstrate that the officer did not intentionally use unnecessary and excessive force, or did not deliberately arrest a person knowing that he lacked probable cause to do so." Id. at 293–94.

Regarding Defendant Hager, Rodriguez does not dispute the following: 1) Defendant Hager was not involved in Rodriguez's physical altercation with law enforcement; 2) Defendant Hager did not otherwise strike or injure the plaintiff; and 3) Defendant Hager did not see Rodriguez until he was handcuffed and seated in the living room. (Doc. 81, Cnty. Defs. SOF ¶¶ 30-31, 34; Doc. 94, Pl. Resp to SOF ¶ 30-31, 34).  These concessions would generally warrant summary judgment in favor of Defendant Hager.

Rodriguez further argues, however, that Defendant Hager "carries supervisory liability for the actions of Agent Schwartz, Agent Adames, and Officer Schwarz" because Hager was "the organizer, leader, and on-site supervisor of the law enforcement operation" leading to the detention and arrest of the plaintiff under physically violent circumstances.  (Doc. 95, Pl. Br. in Opp at 12).

By law, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  But several species of supervisory liability exist, which are not predicated on *respondeat superior*. Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).  Applicable here, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in

charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

When looking at the facts in a light most favorable to the plaintiff, Defendant Hager supervised the operation at Rodriguez's premises. That is, he called for assistance from the Carbon County Drug Task Force and coordinated a planning meeting at the Carbon County Courthouse on the date of the operation. Rodriguez admits that Defendant Hager did not directly participate in the actions that occurred on the second floor of the plaintiff's home.[10] The questions thus remaining for resolution are whether Rodriguez can demonstrate that: 1) Defendant Hager directed others to violate the plaintiff's rights, or 2) as the person in charge, Defendant Hager had knowledge of and acquiesced in Agent Schwartz, Agent Adames, and Officer Schwarz's alleged violations.

In response to summary judgment, however, Rodriguez has not contradicted Defendant Hager's testimony that he was in the basement of the home with James Fredericks when Agent Schwartz, Agent Adames, and Officer Schwarz encountered Rodriguez on the second floor. Additionally, per the summary judgment record, law enforcement discussed the individuals that might

---

[10] In his brief, Rodriguez couples the allegedly illegal entry into the home with his seizure by Agent Schwartz, Agent Adames, and Officer Schwarz. (Doc, 95, Pl. Br. in Opp at 12). For the purposes of Rodriguez's excessive force, failure to intervene, and false arrest claims, the search component of the case must be set aside in this analysis based on issue preclusion.

be residing in the home at a planning meeting. Rodriguez, however, was not on their radar. They were looking for James Fredericks and Chad Himelberger and anticipated encountering Paul Zuzo. And even if law enforcement expected a challenging morning at the residence, the record does not reflect that Defendant Hager told Agent Schwartz, Agent Adames, and Officer Schwarz to "sucker punch" an occupant and punch him repeatedly in the head once he was on the ground if Rodriguez's side of the story is believed. From this record, no reasonable jury could conclude that Defendant Hager knew of and acquiesced to the alleged use of excessive force from two floors below.

And to the extent that Rodriguez also asserts other claims such as assault and battery (under state law) and false arrest/false imprisonment (under Section 1983 and state law) against Defendant Hager, those claims also fall short since Defendant Hager was not involved in Rodriguez's detention and arrest. Summary judgment is thus appropriate in favor of Defendant Hager on all of Rodriguez's Section 1983 and state law claims. Consequently, Defendant Hager will be dismissed as a party to this action.

### b. Defendants Agent Schwartz and Agent Adames

Defendants Agent Schwartz and Agent Adames also specifically move for summary judgment on Rodriguez's excessive force, false arrest/false imprisonment, and assault and battery claims. (Doc. 90, Commw. Br. in Supp. at

11-14).  Like the ruling applicable to Defendant Hager, the court will also extend the Commonwealth Defendants' arguments against the excessive force claim to any claim regarding Agent Schwartz and Agent Adames's alleged failure to intervene in the use of excessive force. [11]

As for the excessive force claim, Rodriguez identified Officer Schwarz as the member of law enforcement that punched him initially and then again repeatedly while he was on the floor. (Doc. 94-1, Pl. Ex. G., Pl. Dep. 18:18-23, 20:25–21:3).  Plaintiff also testified that two officers were holding his legs while he was being punched. (Id., 21:25–22:9).  Although plaintiff could not identify who was holding his legs, reasonable inferences may be made through the testimony of Rodriguez, Agent Schwartz, Agent Adames, and Officer Schwarz that Agent Schwartz was one of the individuals doing so.  A reasonable jury, believing Rodriguez, thus may conclude from the totality of the circumstances

---

[11] Building upon other portions of this memorandum, the Commonwealth Defendants specifically challenge whether Rodriguez appropriately pled a failure to intervene claim. (Doc. 104, Commw. Defs. Reply Br at 2).  The court concludes that he has.  "[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory."  Skinner v. Switzer, 562 U.S. 521, 530 (2011).  Rather, Rule 8(a)(2) "generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." Id. (citation omitted). In support of his failure to intervene claim, plaintiff alleges that "[a]t no point…did law enforcement personnel present in and about the residence (including Chief Deputy Hager, Agent [Adames], and Chief Fittos) intervene to prevent or stop the assault and beating of Mr. Rodriguez." (Doc. 29, Am. Compl. ¶ 27). Such an allegation is sufficient to place the Commonwealth Defendants on notice of claims for the failure to intervene in the use of excessive force against Agent Schwartz and Agent Adames.

that Agent Schwartz held Rodriguez down while Officer Schwarz punched the plaintiff in the face repeatedly.

Such a possible outcome precludes the entry of summary judgment on the Section 1983 excessive force claim as raised against Agent Schwartz. Summary judgment will also be denied as to Rodriguez's state law claim for assault and battery against Agent Schwartz. See Renk, 537 Pa. at 76 ("A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty. In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery.").

Similarly, the facts of record also preclude the entry of summary judgment in favor of Agent Schwartz on the failure to intervene claim. A reasonable jury may hear all accounts of this incident and determine that Agent Schwartz himself used appropriate force but otherwise had a reasonable and realistic opportunity to stop any excessive force used by Officer Schwarz.

Rodriguez, however, has not demonstrated that Agent Adames was involved in the incident after Officer Schwarz pulled Rodriguez and both state narcotics agents to the ground. Rodriguez also does not dispute the fact that Agent Adames did not strike him during the incident. (Doc. 100, ¶¶ 20-21).

41

Summary judgment will be granted in favor of Defendant Agent Adames on Rodriguez's Section 1983 excessive force claim and on his state law assault and battery claim.

On the other hand, summary judgment will not be granted in favor of Agent Adames on the failure to intervene claim. Per Agent Adames, she left the fray after Officer Schwarz pulled everyone to the ground and then turned her attention to other individuals in two bedrooms at the end of the hallway. (Doc. 94-5, Pl. Ex. E, C. Adames Dep. 55:24–57:19). She testified that she did not see Agent Schwartz and Officer Schwarz strike Rodriguez because "she was focused on the rest of the hallway." (Id. 58:8-19). Notwithstanding such testimony, she also testified as follows:

> Q. At some point while Mr. Rodriguez was still on the second floor, did you see Chief Fittos up there?
>
> A. I did not. Not in the hallway. I did see a Sheriff's Deputy, who ended up coming to assist the security of the hallway.
>
> Q. Was that a male or a female Sheriff's Deputy?
>
> A. It was a male.
>
> Q. And at what point during the sequence of events did you see that Sheriff's Deputy on the second floor?
>
> A. While the guys were still struggling on the floor.
>
> Q. I see.

42

A. I remember him stepping over them to try to get to the back of the hallway. And I remember that because I was outnumbered in that hallway.

Q. I see. Did that Sheriff's Deputy participate at all in the struggle with Mr. Rodriguez?

A. No.

Q. Did you see that struggle end?

A. Yes. Eventually, it ended.

(Id., 58:20–59:18).

Consequently, a jury may disbelieve Agent Adames's account about what she observed. They may conclude that she witnessed the entire event, whatever that looked like. If Rodriguez's account is believed and the jury makes certain inferences from the testimony in the plaintiff's favor, Agent Adames watched Officer Schwarz strike the plaintiff in the face as many as sixteen (16) times while Agent Schwartz pinned down his legs. That precludes the entry of summary judgment in favor of Agent Adames on Rodriguez's Section 1983 claim for her failure to intervene in the use of excessive force.[12]

---

[12] The Commonwealth Defendants' brief in support of summary judgment includes a minimal reference to Rodriguez's false arrest claims. (Doc. 90 at 10-11). The evidence of record indicates that Agent Schwartz and Officer Schwarz handcuffed Rodriguez and Agent Adames assisted with the transport of the plaintiff with Chief Fittos. At this juncture, there are genuine issues of material fact regarding Rodriguez's state and federal false arrest claims precluding the entry of summary judgment in favor of Agent Schwartz and Agent Adames on those claims.

43

### c. Officer Schwarz

As for Rodriguez's Section 1983 claims against Officer Schwarz related to his arrest and prosecution, the only dispute discernible from the parties' briefing is whether summary judgment is warranted on Rodriguez's Section 1983 and state law malicious prosecution claims.[13]   A malicious prosecution claim requires Rodriguez to demonstrate that: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Geness v. Cox, 902 F.3d 344, 355 (3d Cir. 2018)(quoting Zimmerman v. Corbett, 873 F.3d 414, 418 (3d Cir. 2017)).

The crux of the Commonwealth Defendants' argument as to this claim is that Officer Schwarz did not institute the criminal charges against Rodriguez, Chief Fittos from the Summit Hill Police Department did. (Doc. 90 at 10-12).

However, if "officers influenced or participated in the decision to institute criminal proceedings, they can be liable for malicious prosecution." Halsey v.

---

[13] As noted earlier in this memorandum, Rodriguez only appears to contest Officer Schwarz's liability for malicious prosecution.  His counterarguments do not reference the conduct of Agent Schwartz or Agent Adames in advancing those claims. (Doc. 101, Pl. Br. in Opp. to Commw. Defs. MSJ at 7-10).

Pfeiffer, 750 F.3d 273, 297 (3d Cir. 2014).  In a related footnote in Halsey, the Third Circuit declined to prescribe "how strong the connection must be between a police officer's misconduct and the defendant's eventual prosecution for the officer to be liable in a malicious prosecution action[.]" Id. at 297, n. 22.

The summary judgment record includes a Jim Thorpe Borough police report completed by Officer Schwarz indicating that he "assisted in charges at Summit Hill PD." (Doc. 100-3, Pl. Ex. B, ECF p. 42-44).  Officer Schwarz also testified in his deposition as follows:

> Q. Okay. Once you enter the house and you make your way up the stairs on the left side there, do you know where Chief Fittos is at that point?
>
> A. No.
>
> Q. Okay. After you take down Mr. Rodriguez, and you are able to place him in handcuffs and you -- you transport him to the living room, do you know where Chief Fittos is at that point?
>
> A. No.
>
> ...
>
> Q. Okay. Did you provide any information to Chief Fittos as -- in order for him to prepare his affidavit of probable cause?
>
> A. Yeah. I would assume that I -- I verbally gave him the idea of what happened.

(Id. 146:13–147:15).

It is unclear from the record whether Chief Fittos from the Summit Hill Police Department actually observed the incident involving the plaintiff. For example, Agent Schwartz testified (like Officer Schwarz) that he did not recall Chief Fittos being present on the second floor during the encounter with Rodriguez. (Doc. 94-4, Pl. Ex. C. Dep. of K. Schwartz 90:6-15, 105:18–106:1). The first time he recalled seeing Chief Fittos was after Rodriguez was already in custody. (Id. 128:18–129:12). Agent Adames also testified that she did not see Chief Fittos near the altercation. (Doc. 94-4, Pl. Ex. D, Dep. of C. Adames, 58:20-25). She also recalled seeing him for the first time after the fact. (Id., 71:16–72:3). Chief Fittos's testimony, however, places him in the middle of the encounter with Rodriguez. (Doc. 94-6, J. Fittos Dep., 30:6–36:13).

Based on these conflicts in the testimony of law enforcement, there are genuine issues of material fact regarding Officer Schwarz's level of involvement in initiating the criminal charges. The record could lead reasonable jurors to the conclusion that Officer Schwarz was deeply involved in the decision to institute criminal charges and that Chief Fittos only acted as a proxy. Thus, summary judgment will be denied regarding the plaintiff's malicious prosecution claims asserted against Officer Schwarz.

## 4. Qualified Immunity

In addition to their other arguments, Defendants Hager, Agent Schwartz, Agent Adames, and Officer Schwarz also assert qualified immunity from Rodriguez's Section 1983 claims.  As discussed above, summary judgment will be granted in Defendant Hager's favor on Rodriguez's claims related to the entry into the premises and for claims related to the plaintiff's arrest and prosecution. Thus, the court need not address his arguments that he enjoys qualified immunity on those claims.

As for the Commonwealth Defendants (Agent Schwartz, Agent Adames, and Officer Schwarz), they did not assert qualified immunity until the middle of their reply brief.[14] (Doc. 104 at 5).   Even then, the Commonwealth Defendants only discuss qualified immunity as it relates to Rodriguez's claims stemming from the entry into his residence.  (Id. at 5-10).  Consequently, the qualified immunity analysis in this matter would be limited to Rodriguez's illegal search claims, which have been resolved in the Commonwealth Defendants' favor.  The court

---

[14] Generally, issues raised for the first time in reply briefs are deemed waived. See Williams v. City of Pittsburgh Pub. Sch. Dist., 742 F. Supp. 3d 464, 468, n. 4 (W.D. Pa. 2024); Javitz v. Luzerne Cnty., 616 F. Supp. 3d 394, 407 (M.D. Pa. 2022), aff'd sub nom. Davis v. Luzerne Cnty., No. 22-2519, 2023 WL 5842299 (3d Cir. Sept. 11, 2023); Brand Design Co., Inc. v. Rite Aid Corp., 623 F. Supp. 3d 526, 537, n. 3 (E.D. Pa. 2022).  Because sur-reply briefing was permitted in this matter to address qualified immunity, the court will thus briefly address such arguments.

will thus not undertake a qualified immunity analysis regarding Agent Schwartz,

Agent Adames, and Officer Schwarz. [15]

## 5. Municipal Liability Claim Against Carbon County

The last matter to address is whether summary judgment is warranted on

Rodriguez's claim for municipal liability against Carbon County.  Such cases are

analyzed pursuant to Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S.

658 (1978) and its progeny.

To survive summary judgment, Rodriguez must either demonstrate that: 1)

an unconstitutional policy or custom of the municipality led to his injuries; or 2)

that his injuries were caused by a failure or inadequacy by the municipality that

reflects a deliberate or conscious choice. See Forrest v. Parry, 930 F.3d 93, 105

(3d Cir. 2019)(citing Monell, 436 U.S. at 694; Est. of Roman v. City of Newark,

914 F.3d 789, 798–99 (3d Cir. 2019); Brown v. Muhlenberg Twp., 269 F.3d 205,

215 (3d Cir. 2001)).  In opposition to the County Defendants' motion for summary

---

[15] As for plaintiff's Section 1983 claims arising from his arrest and prosecution that remain pending against Agent Schwartz. Agent Adames, and Officer Schwarz, the facts surrounding these claims remain in dispute with divergent testimony from the plaintiff and the defendants and various conflicts among the testimony of the law enforcement officers.  "Although qualified immunity is a question of law determined by the [c]ourt, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006)(citing Johnson v. Jones, 515 U.S. 304 (1995)); see also Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002)("Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis.").

judgment, Rodriguez argues that his constitutional injuries were "caused in part by the County's lack of appropriate policies and procedures regarding the legal requirements for law enforcement obtaining valid consent to legally enter a private home for a warrantless search." (Doc. 95, Pl. Br. in Opp to Cnty. Defs. MSJ at 14-15).   Rodriguez's claims for unreasonable search are barred by the principles of issue preclusion.  Even if they were not barred, summary judgment in still warranted in favor of Carbon County on municipal liability claims associated with that claim.

Rodriguez does not argue that Defendant Hager was an individual with policymaking authority on behalf of the Carbon County Sheriff's Department. Rather, the plaintiff essentially proceeds with a "failure to adopt a policy" Monell claim.  Such claims require a showing that the injuries were caused by inaction that manifests a deliberate indifference like the showing required in the failure-to-train context. See Semerod v. Siko, No. 4:24-CV-1165, 2024 WL 4374973, at *3 & n. 37 (M.D. Pa. Oct. 2, 2024)(Brann, J.)(citing Forrest, 930 F.3d at 105–06 (additional citations omitted).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011).  To satisfy Section 1983, a municipality's

failure to train its police officers must amount "to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)(footnote omitted).

A plaintiff demonstrates deliberate indifference "by showing that '(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.' " Est. of Roman, 914 F.3d at 798 (brackets omitted)(quoting Doe v. Luzerne Cnty., 660 F.3d 169, 180 (3d Cir. 2011); Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999)).  Rodriguez has not responded to summary judgment with any evidence showing deliberate indifference by Carbon County policymakers from past situations.  Instead, he refers only to his own incident.

To find deliberate indifference from a single-incident violation, "the risk of... injury must be a 'highly predictable consequence' " of Carbon County's failure to adopt a policy or failure to train its sheriff's deputies. See Thomas v. Cumberland Cnty., 749 F.3d 217, 225 (3d Cir. 2014).  Rodriguez has not demonstrated that Carbon County's alleged failures were highly predictable at all.  Even in the best light, plaintiff has demonstrated only that state narcotics agents bypassed a sheriff's deputy at the entry of his residence apparently dissatisfied with how Carbon County sheriff's deputies were handling things inside and that a Drug

Task Force officer from another municipality rushed in to back up the agents. (Doc. 94-3, Pl. Ex. B, M. Schwarz Dep. 70:14–71:15; Doc. 94-4, Pl. Ex. C, K. Schwartz Dep. 68:1–70:9, 96:6–97:3). Accordingly, summary judgment will be entered in favor of Carbon County on Rodriguez's municipal liability claim and Carbon County will be dismissed as a party to this action.

**Conclusion**

For the reasons set forth above, the County Defendants' motion for summary judgment (Doc. 80) will be granted. The Clerk of Court will be directed to enter judgment in favor of Defendant Hager on Rodriguez's first and second claims for relief in the amended complaint and dismiss him as a party to this litigation. The Clerk of Court will also be directed to enter judgment in favor of Defendant Carbon County on Rodriguez's first claim for relief and dismiss that municipality from this action.

Additionally, the Commonwealth Defendants' motion for partial summary judgment (Doc. 88) will be granted in part and denied in part. Regarding Defendant Agent Schwartz, summary judgment will be granted in favor of this defendant regarding plaintiff's Section 1983 claims for unreasonable search and malicious prosecution and plaintiff's state law claim for malicious prosecution. The motion for summary judgment will otherwise be denied as to this defendant.

Regarding Defendant Agent Adames, summary judgment will be granted in favor of this defendant regarding plaintiff's Section 1983 claims for: 1) unreasonable search; 2) excessive force; and 3) malicious prosecution and regarding plaintiff's state law claims for: 1) assault and battery; and 2) malicious prosecution. The motion for summary judgment will otherwise be denied as to this defendant.

Regarding Defendant Officer Schwarz, summary judgment will be granted in favor of this defendant regarding plaintiff's Section 1983 claim for unreasonable search.  The motion for summary judgment will otherwise be denied as to this defendant.

Regarding Defendant Jim Thorpe Borough, the motion for summary judgment will be granted. The Clerk of Court will also be directed to enter judgment in favor of Jim Thorpe Borough on Rodriguez's first claim for relief and dismiss that municipality from this action.

An appropriate order follows.

Date: 3/25/25

_____
**JUDGE JULIA K. MUNLEY**
**United States District Court**